1   ARASTO FARSAD (SBN: 273118)
    NANCY WENG (SBN: 251215)
2   **FARSAD LAW OFFICE, P.C.**
    1625 The Alameda, Suite 525
3   San Jose, CA 95126
    Tel: 408-641-9966
4   Fax: 408-866-7334
    Email addresses: nancy@farsadlaw.com;
5   farsadlaw1@gmail.com

6   Attorneys for Debtor / debtor-in-possession

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11  In re:                              )  Case No.: 23-30874 DM
                                        )  Chapter 11
12                                      )
    ERICK FERNANDO CRESPO,              )  **MOTION TO VALUE COLLATERAL;**
13                                      )  **MEMORANDUM OF POINTS**
                                        )  **AND AUTHORITIES**
14           Debtor / debtor-in-possession.  )
                                        )  **Judge: Honorable Dennis Montali**
15                                      )
                                        )  **Property Address:**
16                                      )  127 Bridgeview Drive
                                        )  San Francisco, CA 94124
17                                      )
                                        )  **1st Mortgage / Deed of Trust Beneficiary:**
18                                      )  Wells Fargo Home Mortgage
19                                      )
                                        )  **Subject 2nd Mortgage / Deed of Trust**
20                                      )  **Beneficiary(s):** Fremont Bank, Commercial
                                        )  Lending
21                                      )
                                        )
22                                      )
                                        )
23  _____ )

24       **TO THE HONORABLE JUDGE DENNIS MONTALI, THE UNITED STATES**
25  **TRUSTEE'S OFFICE FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL**
    **PARTIES IN INTEREST, AND THEIR RESPECTIVE COUNSEL(S) OF RECORD:**
26
            Now Comes the Debtor herein, Erick Fernando Crespo, in the above-captioned Chapter
27
    11 case, and pursuant to Title 11 U.S.C. §506(a) and FRCP 3012, and BLR 9014, in seeking to
28
    value of the Debtor's real property located at 127 Bridgeview Drive, San Francisco, CA 94124

Motion to Value Collateral; Memorandum of Points and Authorities

("Property") in the amount of **$669,120.00** for purposes of the Debtor's Chapter 11 Plan. **(This Motion to Value is only regarding the 2nd Deed of Trust Holder. The Motion shall not affect the 1st Deed of Trust Holder's claim.)**

This Motion is supported by the instant Memorandum of Points and Authorities, the Declarations filed concurrently herewith with the exhibit pages in support, as well as all files / documents on record with the Court.

## I.   PERTINENT FACTUAL BACKGROUND

1.      The Debtor filed the instant Chapter 11 case on December 23, 2023 and listed a fee simple interest in the Property on Schedule A. (See a true and correct copy attached as **Exhibit A.)**

2.      The Debtor purchased the Property on or about June 26, 2015.

3.      The Debtor has two mortgages / Deeds of Trust against the Property and one secured lien. These liens were listed in Schedule D. (See a true and correct copy attached as **Exhibit B**)

4.      The Debtor obtained the Property via a loan / First Deed of Trust with Live Well Financial, Inc ("Live Well").  Attached is the Deed of Trust recorded on June 26, 2015 in the San Francisco County Recorder's Office under official document number 20159K08293300016. (See a true and correct copy attached as **Exhibit C**)

5.      In the middle of 2015, the Debtor was informed that loan with Live Well was transferred to Wells Fargo Home Mortgage, Inc. ("WFHM") (See a true and correct copy of correspondence form WFMH attached as **Exhibit D**)

6.      At the time of the filing WFMH still retained the First Deed of Trust on the Property. (See a true and correct copy of the most recent mortgage statement attached as **Exhibit E**)

7.      On May 4, 2020, Debtor assumed a business loan for his company, Wise Choice Trans Corp with Fremont Bank, Commercial Lending ("Fremont").  A pre-requisite for the loan was that the Debtor was required to personally guarantee the loan.  To do so, he encumbered the Property with a 2nd Deed of Trust.  This 2nd Deed of Trust was recorded in the San Francisco

County Recorder's Office under official document number 20209K92836000019. (See a true and correct copy attached as **Exhibit F**)

8. On January, 4, 2024, the Debtor filed a Chapter 7 for his business, Wise Choice Trans Corp under Case No. 24-40013 in the Northern District of California. In Schedules A/B, the Debtor listed business equipment / trucks valued at approximately $1,286,000.00. (See a true and correct copy of the property schedules from Debtor's Chapter 7 business filing in Case No. 24-40013 attached as **Exhibit G**) The 2nd Deed of Trust with Fremont Bank was primarily a lien secured against the business equipment / trucks via a duly recorded UCC-1 lien (See a true and correct copy of the recording of this UCC-1 lien attached as **Exhibit H**). The Debtor's Property was secured as 'back-up' collateral only.

9. On the Debtor's filed Schedule A, the Debtor established the value of the Property prior to the filing at $669,120.00 based on a review of the current, comparable sales in the neighborhood with similar conditions of the property-as well as an online property appraisal website, Realtor.com on December 18, 2023.

10. At the time of the filing, Debtor believed the claim of WFHM to be approximately $332,219.00. Per the valuation of the Property at $669,120.00, Fremont's 2nd Deed of Trust claim amount of $1,350,000.00 would be secured in the amount of $336,901.00. The balance of Fremont's claim-$1,013,090.00-would be deemed as "underwater" and treated as an unsecured claim in the instant Chapter 11 as the anti-modification clause does not apply to this 2nd Deed of Trust. Although the lien is attached to Debtor's home, as Fremont also holds other collateral (the $1,286,000.00 lien on the business equipment / trucks), the under secured subject 2nd Deed of Trust may be divided into secured and unsecured claims in the Debtor's Chapter 11 Plan.

11. Accordingly, the Debtor respectfully request that the Property be valued at $669,120.00.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VALUE COLLATERAL (FRBP 3012, 11 USC SECTION 506(a))

12.    Bankruptcy Rule 3012 provides: The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct. 11 U.S.C Section 506(a)(1) provides: An allowed claim of a creditor secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

**Fremont Bank, Commercial Lending**
**SECOND DOT FOR $1,350,000.00**

13.    As stated above, the Debtor's Second Deed of Trust with Fremont is "underwater". This deed of trust should be deemed unsecured with regard to the valuation of the Property. The Debtor now respectfully requests that the Court value this 2nd Deed of Trust/ lien accordingly-i.e., that it be valued as a secured claim of $336,901.00 against the Debtor's Property and as an unsecured claim of $1,013,090.00 in this Chapter 11 case.

WHEREFORE, the Debtor respectfully pray for an order pursuant to Title 11 U.S.C. Section 506(a) and Bankruptcy Rule 3012 as follows:

a)    That the value of the Property (127 Bridgeview Drive, San Francisco, CA 94124) is $669,120.00 for purposes of Debtor's Chapter 11 Plan;

b)    That the junior lien claim / 2nd Deed of Trust of Fremont Bank, Commercial Lending, be deemed partially secured in the amount of $336,901.00 and unsecured in the amount of $1,013,090.00 for purposes of Debtor's Chapter 11 Plan; and

c)    For such other and further relief as this Court may deem just and proper.

Motion to Value Collateral Memorandum of Points and Authorities

Respectfully submitted,

FARSAD LAW OFFICE, P.C.                    Dated: January 20, 2024

*/s/ Arasto Farsad*
Arasto Farsad, Esq.
Attorneys for Debtor / debtor-in-possession

Motion to Value Collateral; Memorandum of Points and Authorities

EXHIBIT A

Debtor 1      **Erick Fernando Crespo**
              First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)   First Name          Middle Name          Last Name

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF CALIFORNIA

Case number   **23-30874**

☐ Check if this is an
  amended filing

Official Form 106A/B

# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes.  Where is the property?

1.1

**127 Bridgeview Drive**
Street address, if available, or other description

**San Francisco      CA      94124-0000**
City                    State      ZIP Code

**San Francisco**
County

| What is the property? Check all that apply | |
|---|---|
| ☑ Single-family home | |
| ☐ Duplex or multi-unit building | |
| ☐ Condominium or cooperative | |
| ☐ Manufactured or mobile home | |
| ☐ Land | |
| ☐ Investment property | |
| ☐ Timeshare | |
| ☐ Other | |

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**1 story, 1183 sq. ft home, 3 bedrooms, 1 bath**
**Valuation per Debtor's research of comparable sales in the neighborhood and an online appraisal website, Realtor.com on December 18, 2023**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$669,120.00** | **$669,120.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property
  (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**.............................................=>

| **$669,120.00** |
|---|

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

EXHIBIT B

| | |
|---|---|
| Debtor 1 | **Erick Fernando Crespo** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | **23-30874** |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property 12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

  ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

  ☑ Yes. Fill in all of the information below.

**Part 1:**   List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
|---|---|---|---|---|
| **2.1**   **Freedom Road Financial**<br>Creditor's Name | **Describe the property that secures the claim:**<br>**2023 Intense Tazer E Bike In very good condtion Valuation per Debtor's review of online E Bike sale sites such as Craigslist / eBay as of the date of the filing** | **$6,242.00** | **$2,000.00** | **$4,242.00** |

**Attn: Bankruptcy 10509 Professional Circle, Suite 100 Reno, NV 89521**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Vehicle loan**

Date debt was incurred   **6/2023**     Last 4 digits of account number   **8887**

| 2.2 | **Fremont Bank, Commercial Lending** | | **$1,350,000.00** | **$669,120.00** | **$1,045,810.00** |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

> **127 Bridgeview Drive San Francisco, CA 94124  San Francisco County**
> **1 story, 1183 sq. ft home, 3 bedrooms, 1 bath**
> **Valuation per Debtor's research of comparable sales in the neighborhood and an online appraisal website, Realtor.com on Dece**

**Attn: Kevin Mon**
**2580 Shea Center Drive, Mailstop 2580-6**
**Livermore, CA 94551**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

Date debt was incurred    **5/2020**

**As of the date you file, the claim is:** Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.

- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)    **2nd Deed of Trust**

Last 4 digits of account number _____

---

| 2.3 | **Harley Davidson Financial** | | **$18,439.00** | **$17,450.00** | **$989.00** |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

> **2021 Harley Davidson Road Glide Special (Touring) 20,000 miles**
> **In good condition**
> **Listing  valuation per kbb.com/motorcycles on or about December 31, 2023**

**Attn: Bankruptcy**
**Po Box 22048**
**Carson City, NV 89721**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

Date debt was incurred    **2021**

**As of the date you file, the claim is:** Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.

- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)    **Vehicle loan**

Last 4 digits of account number    **7489**

| 2.4 | **Santander Consumer USA, Inc.** | Describe the property that secures the claim: | **$40,135.00** | **$32,119.00** | **$8,016.00** |
|---|---|---|---|---|---|

Creditor's Name

**dba Chrysler Capital
1601 Elm Street, Suite 800
Dallas, TX 75201**

Number, Street, City, State & Zip Code

| **2021 Dodge Ram** |
|---|

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Auto loan**

Date debt was incurred    **2021**        Last 4 digits of account number    **0896**

| 2.5 | **Solar Mosaic Inc** | Describe the property that secures the claim: | **$32,711.00** | **$669,120.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**Attn: Bankruptcy
300 Lakeside Dr, 24th Fl
Oakland, CA 94612**

Number, Street, City, State & Zip Code

| **127 Bridgeview Drive San Francisco, CA 94124  San Francisco County
1 story, 1183 sq. ft home, 3 bedrooms, 1 bath
Valuation per Debtor's research of comparable sales in the neighborhood and an online appraisal website, Realtor.com on Dece** |
|---|

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Secured loan**

Date debt was incurred    **2023**        Last 4 digits of account number    **3849**

Case: 23-30874    Doc# 36    Filed: 01/20/24    Entered: 01/20/24 16:39:31    Page 15 of 39

| Debtor 1 | Erick Fernando Crespo | | Case number (if known) | 23-30874 |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

| 2.6 | US Bank | Describe the property that secures the claim: | $23,391.00 | $47,899.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**2018 Tesla Model X P100 D Sport Utility 46,182 miles
In good condition
Private party valuation per kbb.comon or about December 27, 2023**

West Auto Loan
P.O. Box 4493
Portland, OR 97208-4493

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Auto loan**

Date debt was incurred _____   Last 4 digits of account number   **1796**

| 2.7 | Wells Fargo Home Mortgage | Describe the property that secures the claim: | $332,219.00 | $669,120.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**127 Bridgeview Drive San Francisco, CA 94124  San Francisco County
1 story, 1183 sq. ft home, 3 bedrooms, 1 bath
Valuation per Debtor's research of comparable sales in the neighborhood and an online appraisal website, Realtor.com on Dece**

P.O. Box  10335
Des Moines, IA 50306

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **1st Deed of Trust**

Date debt was incurred   **2015**   Last 4 digits of account number   **1162**

| Add the dollar value of your entries in Column A on this page. Write that number here: | $1,803,137.00 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $1,803,137.00 |

| **Part 2:** | List Others to Be Notified for a Debt That You Already Listed |
|---|---|

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Case: 23-30874   Doc# 36   Filed: 01/20/24   Entered: 01/20/24 16:39:31   Page 12 of 39

Debtor 1  **Erick Fernando Crespo**                          Case number (if known)  **23-30874**
         First Name          Middle Name          Last Name

| [ ] | Name, Number, Street, City, State & Zip Code | On which line in Part 1 did you enter the creditor? __2.4__ |
|---|---|---|
| | **Santander**<br>**Attn: Bankruptcy Unit**<br>**P.O. Box 961211**<br>**Fort Worth, TX 76161** | Last 4 digits of account number ___ |

| [ ] | Name, Number, Street, City, State & Zip Code | On which line in Part 1 did you enter the creditor? __2.2__ |
|---|---|---|
| | **U.S. Small Business Administration**<br>**Attn: District Counsel, Suite 600**<br>**San Francisco, CA 94105** | Last 4 digits of account number ___ |

| [ ] | Name, Number, Street, City, State & Zip Code | On which line in Part 1 did you enter the creditor? __2.2__ |
|---|---|---|
| | **U.S. Small Business Administration**<br>**Attn: Isabel Guzman, Admiistrator**<br>**409 Third Street, SW**<br>**Washington, DC 20416** | Last 4 digits of account number ___ |

EXHIBIT C

20159K08293300016
**San Francisco Assessor-Recorder**
**Carmen Chu, Assessor-Recorder**
**DOC 2015-K082933-00**
**Acct 6003-Fidelity National Title - San Francisco**
**Friday, JUN 26, 2015 12:09:56**
**Ttl Pd $63.00      Nbr-0005175474**
**ojl/RE/1-16**

Recording Requested By:
LIVE WELL FINANCIAL, INC.

And After Recording Return To:
LIVE WELL FINANCIAL,
INC.
1011 BOULDER SPRINGS DR. STE 420
RICHMOND, VIRGINIA 23225
Loan Number: 20585

———————————— [Space Above This Line For Recording Data] ————————————

5345/005

127 Bridgeview Dr.    **DEED OF TRUST**

**MIN:** 100877800000205840                                    **MERS Phone: 888-679-6377**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    JUNE 22, 2015                , together with all Riders to this document.
**(B) "Borrower"** is   ERICK FERNANDO CRESPO , AN UNMARRIED MAN
BORROWER'S ADDRESS IS 127 BRIDGEVIEW DRIVE, SAN FRANCISCO,
CALIFORNIA 94124.

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is LIVE WELL FINANCIAL, INC.

Lender is a   DELAWARE CORPORATION                                organized
and existing under the laws of   DELAWARE
Lender's address is   1011 BOULDER SPRINGS DR. STE 420, RICHMOND,
VIRGINIA 23225

**(D) "Trustee"** is   TITLE WORKS OF VIRGINIA, INC
5300 HICKORY PARK DRIVE, SUITE 210, GLEN ALLEN, VIRGINIA 23059

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   JUNE 22, 2015

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                    Page 1 of 14

*DocMagic EForms*
*www.docmagic.com*

The Note states that Borrower owes Lender FOUR HUNDRED TWENTY-FIVE THOUSAND AND 00/100                                                  Dollars (U.S. $ 425,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2045                      .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Second Home Rider
☐ Condominium Rider            ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of

*DocMagic eForms*
*www.docmagic.com*

the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SAN FRANCISCO :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which currently has the address of  127 BRIDGEVIEW DRIVE

[Street]

SAN FRANCISCO              , California        94124        ("Property Address"):

[City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 17 of 73

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 18 of 73

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 19 of 73

by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

*DocMagic eFarms*
*www.docmagic.com*

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 20 of 73

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

DocMagic *eForms*
www.docmagic.com

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 21 of 73

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 22 of 73

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 23 of 73

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

DocMagic *eForms*
www.docmagic.com

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 25 of 73

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DocMagic *eForms*
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.


_Erick Fernando Crespo_____ (Seal)
ERICK FERNANDO CRESPO    -Borrower

_____ (Seal)
                                 -Borrower


_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower


_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower


Witness:                         Witness:


_____    _____

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 27 of 73

——————————— [Space Below This Line For Acknowledgment] ———————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CALIFORNIA___ )

County of _SAN FRANCISCO_ )

On _6/22/2015_ before me, _Doug Alvey, Notary Public_

personally appeared ___ERICK FERNANDO CRESPO___

_____

_____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
DOUG ALVEY
NOTARY PUBLIC - CALIFORNIA
COMMISSION #2006118
CONTRA COSTA COUNTY
My Comm. Exp. February 2, 2017
```

_____
NOTARY SIGNATURE

_Doug Alvey, Notary Public_
(Typed Name of Notary)

NOTARY SEAL

Loan Originator: JOSEPHINE WEI-KI CHU, NMLSR ID 274689
Loan Originator Organization: JC FINANCIAL MANAGEMENT INC, NMLSR ID 1062242

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 14 of 14

*DocMagic eForms*
*www.docmagic.com*

Loan Number: 20585

Date: JUNE 22, 2015

Property Address: 127 BRIDGEVIEW DRIVE
SAN FRANCISCO, CALIFORNIA 94124

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # :

DocMagic EForms
www.docmagic.com

# EXHIBIT "A"
## Legal Description

**For APN/Parcel ID(s):  Lot 005, Block 5345**

BEGINNING AT THE POINT OF INTERSECTION OF SOUTHWESTERLY LINE OF BRIDGEVIEW DIRVE AND THE SOUTHEASTERLY LINE OF LOT NO. 5, IN BLOCK NO. 5345, ACCORDING TO MAP HEREINAFTER REFERRED TO; RUNNING THENCE NORTHWESTERLY ALONG SAID LINE OF BRIDGEVIEW DRIVE 26.035 FEET TO THE SOUTHEASTERLY LINE OF LOT NO. 6 IN SAID BLOCK; THENCE SOUTHWESTERLY ALONG SAID SOUTHEASTERLY LINE OF 112.585 FEET TO THE SOUTHERLY LINE OF SAID LOT NO. 5; THENCE EASTERLY ALONG SAID SOUTHERLY LINE OF 28.994 FEET TO THE NORTHWESTERLY LINE OF LOT NO. 4, IN SAID BLOCK; THENCE NORTHEASTERLY ALONG SAID NORTHWESTERLY LINE OF 100.463 FEET TO THE POINT OF BEGINNING.

BEING LOT NO. 5, IN BLOCK NO. 5345, ACCORDING TO MAP ENTITLED "MAP OF SHARMAN'S A SUBDIVISION OF BRIDGEVIEW TERRACE, SAN FRANCISCO, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, JULY 10, 1941, RECORDED IN MAP BOOK "O" AT PAGES 41 AND 42.

APN: Lot 005, Block 5345

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

Printed: 06.22.15 @ 01:44 PM
CA-FT-FCHC-01500.081501-FCHC-5011500432

EXHIBIT D



WELLS FARGO HOME MORTGAGE
RETURN MAIL SERVICES
PO BOX 10368
DES MOINES IA 50306-0368

07/16/15

| | |
|---|---|
| Payment Due Date: | 08/01/15 |
| Payment Amount: | $2,283.65 |

ᵐˡᵖˡˡᵖᵐˡˡᵖᵐᵐˡˡˡᵖᵐᵖˡᵖˡˡᵖˡˡˡᵖˡˡᵖˡˡˡᵖˡˡ

2MB        01814/000623/010717 0008  6 AGT746 OF027 936

ERICK F CRESPO
127  BRIDGEVIEW DR
SAN FRANCISCO, CA  94124-2230

Subject: Wells Fargo Home Mortgage account number 0524171162

Dear ERICK F CRESPO:

Welcome to Wells Fargo Home Mortgage. As you may know, your loan was recently transferred from LIVE WELL FINANCIAL, INC.. We would like to welcome you as a customer and assure you that our goal is to give you the highest level of quality service.

The servicing of your mortgage loan is being transferred to us effective 08/01/15. This means that after this date, Wells Fargo Home Mortgage will be collecting your mortgage loan payments from you. Let us assure you that the transfer of your mortgage does not affect any of its terms or conditions other than terms directly related to the servicing of your loan. We are required by the Real Estate Settlement Procedures Act (RESPA) to notify you of this transfer (see the Notice of Assignment, Sale or Transfer of servicing rights enclosed).

LIVE WELL FINANCIAL, INC. is now collecting your payments. They will stop accepting payments due after 08/01/15.

Wells Fargo Home Mortgage will collect your payments going forward. We will start accepting payments due on 08/01/15.

Send all payments due on or after 08/01/15 to Wells Fargo Home Mortgage at this address:

Wells Fargo Home Mortgage
PO Box 51965
Los Angeles, CA 90051-6265

If you would like the convenience of having your mortgage payment automatically deducted from your checking or savings account each month, call us at 1-800-222-0238 to enroll. The Automatic Mortgage Payment Program is available to you at no cost.

If your previous servicer had mortgage life, disability, or other optional insurance premiums included in your mortgage payment, we are sorry to inform you Wells Fargo Home Mortgage is currently unable to continue this service. If you wish to maintain your current optional insurance coverage, please contact your present insurer to make the necessary arrangements for continuation of your premium payments.



Together we'll go far

Case: 23-30874    Doc# 31 Filed 10/20/24    Entered 10/20/24 15:17:41    Page 32 of 73

OF027 936
000623/010717 AGT746 S2-ET-M1-C001  2

9360524171162OF027

**Notice of Assignment, Sale or Transfer of Servicing Rights**

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) ( U.S.C. 2605):

Except in limited circumstances, section 6 of RESPA (12 U.S.C. Section 2605) requires that your present servicer send you notice of the assignment, sale, or transfer of the servicing rights to your mortgage loan (i.e., the right to collect payments from you) at least 15 days before the effective date of transfer or at your loan closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at the loan closing.

**Payment information: For the first 60 days following the effective date of the servicing transfer to Wells Fargo, payments that your previous servicer received prior to the due date (plus any applicable grace period) will be forwarded to the new servicer, Wells Fargo, and the new servicer can not assess late fees.**

**Qualified written requests:**
Borrowers may request information concerning their account by sending such requests, including the name of the borrower, information to identify the borrower's account and what information is being requested, in writing to the following address:

Wells Fargo Home Mortgage
Written Correspondence
P.O. Box 10335
Des Moines, IA 50306-0325

**Servicemembers Civil Relief Act**
The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Military Customer Service Center at 1-866-936-SCRA (1-866-936-7272) or fax your Active Duty Orders to 1-877-658-4585, attention Special Loans/SCRA.

**Preferred payment Plan<sup>SM</sup> Terms and Conditions**
If you participate in this payment program, the following Terms and Conditions apply:

- I authorize Wells Fargo Home Mortgage (WFHM), its authorized representatives and service providers to initiate electronic withdrawals from my designated account to make monthly payments on my mortgage.

- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make payments until I receive this confirmation and electronic withdrawals begin.

- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payment, when the payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. Therefore, I must maintain sufficient funds in my account for collection of my monthly payment.

- I understand that withdrawn funds will not be applied to my mortgage until sufficient funds have accumulated for a full monthly payment to be made.

- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.

- I understand that I must provide Wells Fargo notice of at least 10 days or any request to modify, change or terminate participation of this program. I understand that if I modify, change or terminate participation in the program, I may not realize the benefits.

- I agree to be bound by the program's terms and conditions which are stated here and online at www.wellsfargo.com/preferredterms

**Fee schedule**
Fees for assumptions, partial releases, and other services will be quoted upon request. Allowable fees for checks and drafts that are not honored by your bank vary by state and will be assessed automatically. States with fixed fees are as follows: KS-$10; PA & ID $20; SO, NC & OK - $25; HI, IA & MN - $30; SD - $40. Fees are subject to change without notice.

If you have questions regarding the transfer from the previous servicer, please contact their Customer Service Department toll-free or collect at (866) 444-2096. Send your written inquires to LIVE WELL FINANCIAL, INC., 1011 BOULDER SPRINGS DRIVE, SUITE 420, RICHMOND, VA, 23225.

Once again, welcome to Wells Fargo Home Mortgage. We look forward to a long and successful relationship. If we may be of any assistance or if you have any questions concerning your mortgage loan, please contact our customer service department Monday - Thursday 6:00 a.m. - 10:00 p.m., Friday 6:00 a.m. - 9:00 p.m. and Saturday 8:00 a.m. - 2:00 p.m., Central Time. Our toll-free number is 1-800-222-0238. Send your written inquires to the attention of customer service at Wells Fargo Home Mortgage, PO Box 10335, Des Moines, IA 50306-0335.

Sincerely,

*Leesa Whitt-Potter*

Leesa Whitt-Potter
Senior Vice President
Wells Fargo Home Mortgage

OF027 936
000623/010719 AGT746 S2-ET-M1-C001   2
9360524171162OF027

07/16/15

ERICK F CRESPO

127  BRIDGEVIEW DR

SAN FRANCISCO, CA 94124

Subject: Notice of Transfer of your mortgage
        Property Address: 127 BRIDGEVIEW DR
                          SAN FRANCISCO CA 94124

Dear ERICK F CRESPO:

We're writing to provide you with important information about the transfers of ownership of your mortgage.
Please be aware there is no action required of you.

**Understanding your mortgage transfer**
In case you weren't aware, it's a very common practice for mortgage lenders to sell mortgages after
they're originated. (Your mortgage lender is the one named in your promissory note.) This frees up a
lender's cash to make more mortgages. As a result, your mortgage may transfer to a new owner several
times, shortly after your loan closing and during the life of your mortgage.

According to federal law, each new owner of your mortgage is required to send you a notice, even if they
will only own your mortgage for a very short time. This means you may receive several notices like this
one. Please understand that these transfers are normal business practice, and they do not affect any of
the terms of your mortgage.

**Important information about your new mortgage owner**
On July 07, 2015, Wells Fargo Bank, N.A. purchased your loan from LIVE WELL FINANCIAL, INC.. As
your new mortgage owner, we're happy to have you as our customer and can be reached as follows:

Mail:        Wells Fargo Bank N.A
             P.O. Box 10335
             Des Moines IA, 50306-0335

Phone:       1-800-222-0238

Please note when the ownership of your loan was transferred to Wells Fargo Bank N.A., the previous
owner may record that transaction. If it has been recorded, the recording location is the office of public
land records or the recorder of deeds office for the county or local jurisdiction where the property is
located.

**About your mortgage servicing**
This notice does not change the servicing of your mortgage. If your servicing is changing, you will receive



OF027 936
000623/010720 AGT746 S2-ET-M1-C001   2

or have already received a notice from your mortgage servicer.

We're happy to have you as our customer and look forward to helping you with your financial needs. If you have questions, please contact us at the number listed above.

Sincerely,

*Leesa Whitt-Potter*

Leesa Whitt-Potter
Senior Vice President
Wells Fargo Home Mortgage

Wells Fargo Funding is a division of Wells Fargo Bank, N.A. ©2014 Wells Fargo Bank, N.A. All rights reserved. Equal Housing Lender

## Property Insurance Information

*Customers often ask us for our property insurance requirements. This insert was designed to provide you with a convenient reference on insurance information. Please retain this insert with your important mortgage papers.*

**Acceptable Insurance Companies**
*Wells Fargo Home Mortgage shall have the right to approve the insurer you select to underwrite the insurance we require as a condition of your mortgage.*

*The insurer must be rated by the A.M. Best Company, as having a B or better general policyholder's rating and a financial class size of at least III or a Demotech, Inc., minimum rating of A.*

*The insurer must be authorized to do business in the state where the property is located.*

*Policies from a State Fair Plan, Wind Pool, or from a non-admitted insurer are acceptable only when coverage cannot be obtained from insurance companies authorized to do business in the state.*

**Insured Name and Property Address**
*The policy must show name(s) of insured(s) identical to those shown on the loan documents, and a property address corresponding to that shown on Wells Fargo Home Mortgage's records. A legal description must be shown for rural properties, condominiums, or other situations if property address does not adequately define the location of the property. (Example: Star Route 1, Box 5, is inadequate)*

**Policy Forms and Perils**
*A Hazard insurance policy is required. The policy must provide coverage equal to or broader than those coverages provided under a standard Insurance Services Office (ISO) homeowner's form HO-3. The Hazard policy (or a separate Wind policy) must include coverage for windstorm, including hurricanes and named tropical storms.*

**Minimum Coverage**
*The minimum coverage required is 100% of the insurable value of the improvements on the property as determined by the Hazard Insurance provider. The insurance policy must indicate claims settlement for damage to the dwelling will be on a replacement cost basis.*

*Flood Insurance will be required if the property is designated to be within a special flood hazard area either prior to or after the time of loan closing. The amount of flood Insurance required will be 100% of the Hazard coverage, up to the maximum limit available from the National Flood Insurance Program. Wells Fargo Home Mortgage requires that you review your policy periodically with your agent or company to ensure that your policy is sufficient to protect the property and that it is adjusted to keep up with increasing replacement costs.*

**Deductibles**



*Hazard and Windstorm deductibles for most programs are acceptable up to 5% of the dwelling or building coverage limit.*

*Flood deductibles are acceptable up to $10,000.*

*Qualification for some special programs we offer might require you to carry a lower deductible.*

### Policy and Premium Term
*The policy must be written for at least a one year term or be continuous until cancelled.*

### Policy Submission and Inception Date
**The loan number must appear on the face of the submitted document for all renewals.**
*Policies replacing existing insurance must have an inception date concurrent with the policy it replaces so there is not gap in coverage.*

### Certificates of Insurance
*Wells Fargo Home Mortgage will accept an original lender's Certificate of Insurance issued by an authorized company in lieu of the original policy, provided the certificate includes: insured name; lender; property address; type, amount and effective dates of coverage; deductible and coverage amounts; insurer's agreement to provide at least 10 days notice to Wells Fargo Home Mortgage before any reduction on coverage or cancellation of policy; and signature of authorized representative of the issuers (if required by law).*

### State Fair Plans & Wind Pools
*Some State Fair Plans and Wind Pools take up to 90 days to issue an original policy. Because this would create an undue hardship in a sale or refinance, we will accept a copy of the application for insurance, and a copy of a cashier's check, money order, or agent's check showing proof of payment. Copies of personal checks are not acceptable unless they have cleared the bank. Renewals under these programs are handled as any other insurance policy.*

### Failure to Provide Coverage
*Any **renewal** policy must be received at least 30 days prior to expiration of existing coverage. **Binders are not acceptable for renewal.***

### Lender Placed Insurance
*In the event a renewal is not received before the expiration date, or a notice of cancellation is received from your insurance provider, or if the insurance you provide does not meet the requirements of Wells Fargo Home Mortgage, your loan servicer may secure limited Lender Placed insurance coverage at your expense.*

*Insurance coverage obtained by your loan servicer will not provide the same coverage as your preferred policy. The insurance may cover flood and/or fire hazard and not provide liability or contents coverage. You will probably pay higher premium for less coverage than you would for insurance which you can buy from the company or agent of your choice.*

*The cost for Lender Placed insurance will be charged to you. In order to minimize the cost of insurance to you and to maximize the type and amount of coverage for your property, it is recommended that you secure your own insurance coverage from the company or agent of your choice. Unearned premiums on Lender Placed insurance will be refunded to you when you provide evidence of acceptable insurance.*

### Mortgagee Clause
*The policy must contain a standard mortgagee clause in favor of Wells Fargo Home Mortgage. The Lender's name, address and borrower's loan number must appear on the policy exactly as the clause shown below:*

*Wells Fargo Bank, N.A. #936*
*Loan #*
*Its successors and/or assigns*
*PO Box 100515*
*Florence, SC 29502-0515*

### Premium Payment
*All premiums for new loans, assumptions or renewals are to be paid by the borrower, except where escrow accounts (impounds) are maintained for insurance.*

### Other Property Insurance
*Wells Fargo Home Mortgage may require mudslide, sinkhole, mine subsidence, volcanic eruption, lava flow, avalanche and/or earthquake insurance depending on the location of the property.*



OF027 936
000623/010722 AGT746 S2-ET-M1-C001   2

9360524171165OF027



**Initial Escrow Account Statement Notice**
**California Escrow Customers**

Your monthly tax collection amount by Wells Fargo Bank, N.A. for your escrow account is based on an estimate of the future assessed value of your property. Because your next tax bill from your taxing authority may be issued based on your previous assessed value, the taxing authority may issue a supplemental bill(s). The supplemental bill(s) will be sent directly to you and Wells Fargo Home Mortgage will not receive a copy. The tax collection amount for your escrow account includes funds for a portion of your supplemental tax bill. The funds collected for your supplemental tax bill will vary depending on your loan closing date and the practices of your local taxing authority.

If you choose to have your supplemental bill paid from your escrow account, it is your responsibility to forward your supplemental bill to us for payment at least 15 days prior to the delinquent date. If we pay this supplemental bill from your escrow account it may result in an escrow shortage. This shortage will be reflected in your next escrow analysis and your mortgage payment will be adjusted accordingly. If you choose to pay your own supplemental bill, an overage in your escrow account may result. This overage will be reflected in your next escrow analysis and your mortgage payment will be adjusted accordingly.

**IF YOU DO NOT HAVE AN ESCROW ACCOUNT, PLEASE DISREGARD THIS NOTICE.**

Supplemental bills should be sent to:     Wells Fargo Home Mortgage
                                          X2502-011
                                          1 Home Campus
                                          Des Moines, IA 503028-0001


Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.



EXHIBIT E

**WELLS FARGO** | Home Mortgage

*Return Mail Operations*
*PO Box 14411*
*Des Moines IA 50306-3411*

| | |
|---|---|
| Statement date | 12/01/23 |
| Loan number | 0524171162 |
| Payment due date | 01/01/24 |
| **Total amount due** | **$2,984.59** |

On or after 01/16/24, a late charge of $99.93 may apply.

| Property address | 127 BRIDGEVIEW DR |
|---|---|
| | SAN FRANCISCO, CA 94124 |

### Customer Service

| | |
|---|---|
| ✉ Correspondence | ☎ Telephone* |
| PO Box 10335 | 1-800-222-0238 |
| Des Moines IA 50306 | |
| | 🖷 Fax |
| ✓ Payments | 1-866-278-1179 |
| wellsfargo.com | |
| PO Box 51162 | 🕐 Hours of operation |
| Los Angeles CA 90051 | Mon - Fri 7 a.m. - 10 p.m. |
| | Sat 8 a.m. - 2 p.m. CT |
| | $ Purchase or refinance |
| | 1-800-554-2880 |

*We accept telecommunications relay service calls.

ERICK F CRESPO
127 BRIDGEVIEW DR
SAN FRANCISCO, CA 94124-2230

NNNNNNNNNN

**Payments are set up to be withdrawn automatically.**

### Explanation of amount due

| | |
|---|---|
| Principal | $925.72 |
| Interest | $1,072.79 |
| Escrow | $986.08 |
| Current payment | $2,984.59 |
| Total amount due 01/01/24 | $2,984.59 |

### Account summary

| | |
|---|---|
| Unpaid principal balance | $332,218.19 |
| *(This is not a payoff amount.)* | |
| Unpaid second principal balance | $7,994.04 |
| Escrow balance | $1,855.01 |
| Interest rate | 3.875% |
| Maturity date (month/year) | 07/45 |

### Past payments breakdown

| | Since last statement | Year-to-date |
|---|---|---|
| Total received* | $2,984.59 | $35,718.69 |
| Principal | $922.74 | $10,878.96 |
| Interest** | $1,075.77 | $13,103.16 |
| Escrow | $986.08 | $11,736.57 |
| Taxes disbursed (YTD) | | $9,715.11 |
| Insurance disbursed (YTD) | | $1,490.00 |

*This total may include the Unapplied funds balance from the Account summary section.
**This information should not be used for tax purposes. If you have tax related questions, please consult your tax advisor.

### Informational messages

Are you experiencing a financial hardship related to COVID? If so, your state may have funds available for assistance with mortgage payments. For more information, go to: www.wellsfargo.com/homeownerassistancefund

### Activity since your last statement

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 12/01 | Payment 12/2023 | $2,984.59 | $922.74 | $1,075.77 | $986.08 | |
| 11/21 | County tax payment | | | | -$4,906.39 | SAN FRANCISCO CO (W)(S) |

### Important messages

This is not a bill: our records indicate your payments are scheduled to withdraw automatically. All funds are applied when sufficient funds have accumulated to make a full monthly payment, as outlined in your mortgage note. A payment remitted via another source will not stop the drafting process. If you are paying off your loan, please contact us at least five (5) days prior to your next withdrawal date.

### For your consideration

Now's your time. Turn hopes into home sweet home.
As a valued Wells Fargo customer, you can count on us to help make your next homebuying dream a reality. We can help you explore low down payment options, get competitive rates, and estimate how much you may be able to borrow with a complimentary preapproval.
Call 1-800-317-3601, or contact your local home mortgage consultant to get started. Ask about additional benefits available for union members, employees of participating companies, veterans, and more.

Get more from your mortgage
Did you know there's a powerful dashboard for your mortgage? It's full of digital tools, insights, education, neighborhood value trends, and much more. Explore interactive amortization schedules and informational videos on a wide range of mortgage topics. Check out your dashboard today at wellsfargo.com, select your mortgage account and click on Explore Dashboard in the menu bar.

Help take control of your finances with a Wells Fargo personal loan
Whether it's managing debt, making a large purchase, improving your home, or paying for unexpected expenses, a personal loan may be able to help. See personalized rates and payments in minutes with no impact to your credit score. Get started at wellsfargo.com/personalloan

---

ERICK F CRESPO
127 BRIDGEVIEW DR
SAN FRANCISCO, CA 94124

Loan number
0524171162
On or after 01/16/24, a late charge of $99.93 may apply.

*Please specify additional funds*

| | | |
|---|---|---|
| Payment x pmt amt | A | $ |
| Additional principal | B | $ |
| Late charges | C | $ |
| Other fee(s) | D | $ |
| Additional escrow (if applicable) | E | $ |
| Total amount enclosed (Please do not send cash) | F | $ |

*Check here and see reverse for address correction.*

WELLS FARGO HOME MORTGAGE
PO BOX 51162
LOS ANGELES CA 90051-5462

This is not a bill, but for your information only.

936 0524171162 1000029845903084520298459000000 0000000000000000000 2

For questions about your current mortgage loan:
United States: 1-866-234-8271
International access (where available): 00-800-28832122

Access your account online at www.wellsfargo.com

After signing in, select your mortgage account to view loan details, and:
- Schedule automatic payments, set up payment alerts[1], retrieve official tax information, and more.
- Get more from your mortgage. Select "Explore Dashboard"[2] to discover potential savings on the interest you could pay over time, consider home values in your neighborhood, and explore other helpful tools.
- Powerful home tools just for you: Select "Shop for Homes" to view home values and sale trends, school rankings, and even search for your next home[3].

For questions about a new mortgage loan: 1-866-846-9111

1. Sign up may be required. Availability may be affected by your mobile carrier's coverage area. Your mobile carrier's message and data rates may apply.
2. Some dashboard features are not available for all loans. Call the customer service number on the front of your statement for details.
3. Powered by ComeHome.

Wells Fargo also offers:
Checking, Savings, Credit Cards, and Personal Loans

Important information - Payments received after normal business hours will be credited the following business day.

If you send your payment to any other location, it may cause a processing delay. If your mortgage check does not clear upon initial presentment, your bank may charge a fee and we may attempt to withdraw funds from your account electronically up to a maximum of three times. If we are not able to successfully collect these funds, the check amount will be reversed from your loan.

If you would like to make an extra payment toward the loan principal, please indicate with the payment that it is intended for pre-payment of principal, and we will evaluate whether the payment is eligible for a principal pre-payment based on the account status. If we receive funds in excess of the total amount due without instructions, those excess funds may be applied to future contractual payments, fees, costs, escrow shortages or principal, depending upon the specifics of the account and the amount of the funds received.

Fee schedule - Fees for assumptions, partial releases, and other services will be quoted upon request.

Disputing account information reported to credit bureaus - We may furnish information about your account to credit bureaus. You have the right to dispute the accuracy of information that we have reported by writing to us at the correspondence address noted on the front of this statement and describing the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that you believe relates to identity theft, you will need to provide us with an identity theft report.

Fannie Mae educational resources - If you would like additional information regarding your loan, educational resources are available at Fannie Mae's consumer website, www.fanniemae.com.

Ways to make a payment
--Online: Sign on at wellsfargo.com.
--Automatic withdrawal: Enroll by signing on at wellsfargo.com or call us.
--Mail: Send the payment along with the coupon attached to this statement. We cannot accommodate postdated checks. If you mail a postdated check, it will be processed as of the date received.
--Phone: Call us at the Customer Service number provided on the front of this statement.
--In person: Bring the payment, along with the coupon, to any Wells Fargo branch or transfer between accounts.

Other options, like sending a payment by wire or using a third-party bill payment service, are also available. Call us to learn more. Third-party fees may apply to some of these options.

Notice regarding Third Party Liens -Wells Fargo will not allow the use of a loan from another lender to pay taxes. Such loans violate your mortgage agreement as they create liens on your property that may take priority over the mortgage lien.

Notice regarding Property Tax Deferrals -Wells Fargo is not able to accept Property Tax Deferrals in all states, based on the terms of the deferral program. Please contact us to confirm if the tax deferral offered in your state is an approved program.

Servicemembers Civil Relief Act -The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Military Customer Service Center at 1-866-936-7272 or fax your Active Duty Orders to 1-877-658-4585, attention SCRA. In addition, if you are considering a refinance please be aware that you should consult with your legal advisor regarding the potential loss of any benefits.

Housing counselor information -For help exploring options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/find-a-housing-counselor/, or obtain no-cost assistance by contacting the Department of Housing and Urban Development at https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling 1-800-569-4287.

Disaster information -Our disaster assistance team is here to help if you're ever affected by a disaster, like a fire, flood, or storm. If you need help with insurance claims, payments, or anything else related to this mortgage, please contact us. You can call us at the number listed on the front of this statement, or visit wellsfargo.com/recovery for additional information.

New York property borrowers - We are registered with the Superintendent of the New York Department of Financial Services as an exempt servicer. You may file complaints and obtain further information about Wells Fargo by contacting the New York State Department of Financial Services Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

Americans with Disabilities Act requests- If you would like to receive written communications for this account in an alternative format, in compliance with the Americans with Disabilities Act, you can contact us at the Customer Service number provided on the front of this statement.

Designated address for qualified written request, notice of error, request for information
Borrowers have certain rights under Federal law related to resolving errors and requesting information about their account, and that they may learn more about their rights by contacting the servicer. A qualified written request, notice of error, and request for information are written correspondence (not on a payment coupon or other payment medium) that  must include, or otherwise enable us to identify the:  name of each borrower, account number and a description of the error you believe has occurred OR a request for specific information (or additional accounting) regarding your account. Your submission  must be in writing and sent to:  P.O. Box 10335, Des Moines, IA 50306.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2023 Wells Fargo Bank, N.A. Member FDIC.  NMLSR ID 399801



Address and phone number change -Please be sure to check the box on the front of payment coupon.

| Borrower first name | | Borrower last name | |
| Co-borrower first name | | Co-borrower last name | |
| New mailing address | | | |
| City, state/zip | | | |
| Home phone | | Work phone | |

EXHIBIT F

20209K92836000019
San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC 2020-K928360-00
Acct 7195-Consumer's Title Company - SYNRGO
Monday, MAY 04, 2020 12:03:58
Ttl Pd   $146.00      Nbr-0006186637
AL1/RE/1-19

Recording requested by Synrgo

After recording return to:
Fremont Bank, Commercial Lending
Attn:   Kevin Mon
2580 Shea Center Drive, Mailstop 2580-6
Livermore, California 94551

Property Address:
127 Bridgeview Drive
San Francisco, California  94124

Permanent Real Estate
Assessor's Parcel Number:
32-5345-005-01

## SECOND DEED OF TRUST

**THIS INDENTURE** is made this 29th day of April, 2020, by **ERICK FERNANDO CRESPO** (the "Trustor"), whose address is 127 Bridgeview Drive, San Francisco, California 94124, to **CONSUMER'S TITLE COMPANY OF CALIFORNIA** (the "Trustee"), whose address is 11246 Gold Express Drive, Suite 101, Gold River, California 95670, for the benefit of **FREMONT BANK**, a California corporation (the "Beneficiary"), whose address is 2580 Shea Center Drive, Mailstop 2580-6, Livermore, California 94551.

## W I T N E S S E T H:

**WHEREAS,** this Second Deed of Trust (the "Deed of Trust") is made and delivered by Trustor, as security for that certain Unconditional Guarantee of even date herewith, made by Trustor (the "Guarantee"), in favor of Beneficiary in order to secure a loan (the "Loan") from Beneficiary to Wise Choice Trans Corp., a California corporation (the "Borrower") in the original principal amount of One Million Eight Hundred Fifty Thousand and No/100 Dollars ($1,850,000.00), which loan is evidenced by a promissory note, of even date herewith, made by Borrower to the order of Beneficiary in the original principal amount of the Loan (the "Note"). Trustor's obligations under the Deed of Trust and Guarantee and Borrower's obligations under the Note are hereby referred to as the "Obligations".

**NOW, THEREFORE,** in order to secure the Obligations described in the Recitals above, including the performance of the covenants herein contained, and also to secure the payment of any and all other indebtedness, direct or contingent, that may now or hereafter become owing by Trustor as a direct or indirect result of the Obligations, Trustor does by these presents GRANT, BARGAIN,

J:\TJC\20440\172\CA-Deed of Trust.doc                    - 1 -

SELL, CONVEY and DEED OF TRUST unto Trustee in trust, with power of sale, for the benefit of Beneficiary, its successors and assigns forever, the real estate, situate, lying and being in the County of San Francisco, State of California, as described on Exhibit "A" annexed hereto and made a part hereof (the "Real Estate"), together with all water rights vested therein and all improvements thereon situated and which may hereafter be erected or placed thereon, and all and singular the tenements, hereditaments, and appurtenances and easements thereunto belonging and the rents, issues and profits thereof, which are hereby expressly conveyed and assigned to the Trustee as additional security and as an equal and primary fund with the property herein conveyed for the performance of the Obligations and the repayment of all sums secured by this Deed of Trust.

It is mutually covenanted and agreed, by and between the parties hereto that, in addition to all other things which at law or by convention are regarded as fixtures, and specifically but not by way of limitation, all furniture, furnishings, appliances, equipment, fixtures and appurtenances now or hereafter acquired by Trustor and installed or located upon the Real Estate, whether attached or detached, and such other goods and chattels as may ever be furnished by a landlord in letting and operating an unfurnished building, similar to any building now or hereafter standing on said Real Estate, whether or not the same are or shall be attached to said building by nails, screws, bolts, pipe connections, masonry, or in any other manner whatsoever, which are now or hereafter to be used upon said described Real Estate shall be conclusively deemed to be "fixtures" and an accession to the freehold and a part of the realty, whether affixed or annexed or not, and conveyed by this Deed of Trust; and all the estate, right, title or interest of the said Trustor in said Real Estate, property, improvements, furniture, apparatus, furnishings and fixtures, are hereby expressly conveyed, assigned and pledged to Beneficiary hereby (the Real Estate and all other property described in this paragraph are hereinafter collectively referred to as the "Premises").

**TO HAVE AND TO HOLD** the above described Premises with the appurtenances and fixtures thereto appertaining or belonging unto the Trustee for the benefit of the Beneficiary, its successors and assigns, forever, for the purposes herein set forth and to secure the Obligations hereinbefore described, and interest thereon.

The Trustor hereby expressly covenants and agrees with the Beneficiary, its successors and assigns, as follows:

1.    <u>Ability to Deed the Premises</u>. That Trustor has unencumbered title, in fee simple, to the above described Premises and has full right and power to convey and deed the same and covenants and agrees to execute and deliver or cause to be executed and delivered same, subject only to a first deed of trust (the "First Deed of Trust") in favor of Mortgage Electronic Registration Systems, Inc., solely as nominee for Live Well Financial Inc. to secure an indebtedness in the original principal amount of Four Hundred Twenty-Five Thousand and No/100 Dollars ($425,000.00), which First Deed of Trust was recorded in the office of the San Francisco County, California Recorder on June 26, 2015, as Document No. 2015-K082933-00 of Official Records.

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 44 of 73

2. <u>Covenants of Trustor</u>. The Trustor, its successors and assigns, agree as follows: (i) to pay all indebtedness hereby secured as the same from time to time becomes due and agrees that if remittance be made in payment of principal or interest or otherwise either by check or draft, it shall be subject to the condition that such check or draft may be handled for collection in accordance with the practice of the collecting bank or banks, and that any receipt issued therefore shall be void unless the amount due is actually received by the Beneficiary; (ii) to keep the Premises in good repair and commit no waste on said property and to do nothing and to permit nothing to be done that may impair the value of the Premises or the security intended to be effected by this Deed of Trust; (iii) to pay promptly, when due, all taxes and assessments, levied or assessed upon the Premises, and, in no event to permit said Premises, or any part thereof, to be sold or forfeited for nonpayment of such taxes or assessments; (iv) not to permit the lien of any mechanics or materialmen or any prior or coordinate lien of any kind to attach to or to remain against the said Premises; (v) to comply strictly with all of the laws, ordinances, and rulings of any municipal or other governmental department relating to said Premises. In the event the Trustor shall fail to keep and perform any of the foregoing covenants and agreements, then the Beneficiary may, at its option, (i) pay any delinquent taxes or assessments or redeem such Premises from any tax sale or forfeiture or purchase any tax title obtained or that shall be obtained thereon; (ii) pay or compromise any and all suits or claims for liens by mechanics or materialmen or any other suits or claims that may be made against said Premises; (iii) make repairs upon said Premises; or (iv) pay insurance premiums on policies covering said Premises; and the said Trustor further covenants and agrees to repay forthwith, without demand, all moneys paid for any such purpose and any other moneys advanced by the Beneficiary to protect the lien of this Deed of Trust, with interest thereon from the date of the payment at the rate of eleven percent (11%) per annum, and all such moneys shall, if not otherwise repaid, become so much additional indebtedness secured by this Deed of Trust and be included in any decree foreclosing this Deed of Trust and be paid out of the rents, issues and profits of the Premises hereinbefore described, or out of the proceeds of sale of said Premises; and it shall not be obligatory upon the Beneficiary to inquire into the validity of (i) any such tax deed, taxes or assessments or of sale or of forfeitures therefore, or (ii) claims of liens of mechanics or materialmen or other liens or claims affecting said Premises before advancing money in that behalf, as herein authorized, but nothing herein contained shall be construed as requiring the Beneficiary to advance or expend any moneys for any purpose aforesaid nor shall any such payments or advancements be construed so as to in any way limit or impair the right of the Beneficiary to avail itself of such default by taking such action at law or in equity as it may deem necessary or advisable to enforce the security hereby given it.

3. <u>Hazard Insurance</u>. The Trustor further agrees to keep all buildings, improvements and fixtures, constituting part of the Premises, until the indebtedness secured hereby is fully repaid, insured against loss or damage, by fire, lightning, tornado, rents or other casualty for such amounts and in such insurance company or companies as may be satisfactory to the Beneficiary, and it is hereby expressly agreed that the Beneficiary shall not be liable for any failure to insure or for the insolvency or irresponsibilities of any such insurance company or companies. All sums recoverable on any such insurance policy shall be made payable to the Beneficiary, by a trustee clause, satisfactory to the Beneficiary, to be attached to such policies, except in case of sale pursuant to a foreclosure of this Deed of Trust, from which time and until the period of redemption, if any, shall expire, said insurance policy or policies shall be made payable to the holder of the certificate of sale.

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 45 of 73

All such policies shall be retained by the Beneficiary as additional security for the Obligations secured by this Deed of Trust and by the purchaser under any sale or decree of foreclosure; and in the event any such insurance policy shall expire during the life of this Deed of Trust, or any extension thereof, the Trustor hereby agrees to procure and pay for insurance policies complying with the above qualifications, replacing said expired policies and deposit same with the Beneficiary together with receipts (showing the premiums therefore have been paid in full) ten (10) days prior to said expiration date. Such insurance policy shall provide that Beneficiary shall be given not less than thirty (30) days advance notice of cancellation or termination of the policy. In case of loss the Beneficiary or the holder of any certificate of sale, or the holder of the decree of sale, is hereby authorized to settle and adjust any claims under such policies or to allow said Trustor to settle with the insurance company or companies the amount to be paid upon the loss; and in either case such holder of the policy is authorized to collect and receipt for any such insurance money and apply it, at the option of the Beneficiary, in reduction of the principal or any other indebtedness hereby secured, whether due or not, or may allow the Trustor to use said insurance money, or any part thereof, in repairing the damage or restoring the improvements, without affecting the lien hereof for the full amount secured hereby, and during the time said insurance money may be retained by the Beneficiary, the Beneficiary shall not be liable for any interest thereon; that in case of a loss after foreclosure proceedings have been instituted, the proceeds of any such insurance, if not applied as aforesaid in repairing damage or restoring improvements, shall be used to pay the amount due in accordance with the decree of foreclosure and any other indebtedness secured hereby, and the balance, if any, shall be paid to the owner of the equity of redemption, if any, on reasonable request or as the court may direct. Notwithstanding any of the foregoing provisions to the contrary, then Beneficiary shall, prior to the institution of foreclosure proceedings and provided Trustor is not then in default under any of the terms or provisions of this Deed of Trust, allow the Trustor to use any insurance proceeds in repairing the damage or restoring the improvements subject to such terms and conditions as Beneficiary may reasonably impose as to disbursement of such proceeds.

4.   Events of Defaults. In case of (a) a default by Trustor with respect to the Guarantee, which default remains uncured beyond any cure period provided in such Guarantee, or (b) a default by Borrower under the Note, which default remains uncured beyond any cure period provided in the Note, or (c) a default by Trustor in the performance of its obligations hereunder, which default shall continue beyond the cure period contained herein; or (d) the failure of Trustor to pay any tax, insurance premium, water rate or assessment for ten (10) days after the due date therefor; or (e) upon failure or default in the performance of any of the covenants contained in this Deed of Trust continuing for a period of ten (10) days; or (f) in the event that any proceeding shall be begun to enforce or collect any junior lien against the Premises; or (g) said Premises coming into the possession or control of any court; or (h) threatened removal or demolition of any improvements on the Premises or portion thereof; or (i) any default under the First Deed of Trust or the note which is secured by the First Deed of Trust, then, Trustor shall be deemed in default hereunder and Beneficiary shall be entitled to exercise any of its remedies set forth in Section 5 hereof.

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 46 of 73

5.     Remedies.  When any event of default which is not cured within the applicable grace period, if any, has occurred and is continuing (regardless of the pendency of any proceeding which has or might have the effect of preventing Trustor from complying with the terms of this instrument) and in addition to such other rights as may be available under applicable law, but subject at all times to any mandatory legal requirements:

(a)  Foreclosure by Sale.  Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby.  After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law.  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any maters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.  After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(b)  Judicial Foreclosure.  Beneficiary may proceed to protect and enforce the rights of the Beneficiary hereunder (i) by any action at law, suit in equity or other appropriate proceedings, whether for the specific performance of any agreement contained herein, or for an injunction against the violation of any of the terms hereof, or in aid of the exercise of any power granted hereby or by law, or (ii) by the foreclosure of this Deed of Trust.  In any suit to foreclose the lien hereof, there shall be allowed and included as additional indebtedness hereby secured in the decree of sale, all expenditures and expenses authorized by the California Foreclosure of Deed of Trusts and Land Contracts Law (the "Act") and all other expenditures and expenses which may be paid or incurred by or on behalf of Beneficiary for reasonable attorney's fees, appraiser's fees, outlays for documentary and expert evidence, stenographer's charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all such abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Beneficiary may deem reasonably necessary either to prosecute such suit or to evidence to bidders at sales which may be had pursuant to such decree the true conditions of the title to or the value of the Premises.  All expenditures and expenses of the nature mentioned in this section, and such other

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 47 of
73

expenses and fees as may be incurred in the protection of the Premises and rents and income therefrom and the maintenance of the lien of this Deed of Trust, including the reasonable fees of any attorney employed by Beneficiary in any litigation or proceedings affecting this Deed of Trust or the Premises, including bankruptcy proceedings, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional indebtedness hereby secured and shall be immediately due and payable by Trustor, with interest thereon at the Default Rate identified in the Note until paid (hereinafter defined).

(c) <u>Appointment of Receiver</u>. In any foreclosure proceeding the court shall, upon application, at once, and with ten (10) days notice to Trustor, or any party claiming under Trustor, and without giving bond on such application (such notice and bond being hereby expressly waived) and also without reference to the then value of said Premises, to the use of said Premises as a homestead, or to the solvency or insolvency of any person liable for any said indebtedness, appoint a receiver for the benefit of the legal holder of the indebtedness secured hereby, to take possession of the Premises, with power to collect rents, issues and profits of the Premises, then due or to become due, during the pendency of such foreclosure suit, and until the time to redeem the same shall expire (such rents, issues and profits being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this Deed of Trust); this provision for appointment of a receiver being expressly a condition upon which the loan hereby secured was made.

(d) <u>Taking Possession, Collecting Rents, Etc.</u> Upon demand by Beneficiary, Trustor shall surrender to Beneficiary and Beneficiary may enter and take possession of the Premises or any part thereof personally, by its agent or attorneys or be placed in possession or receiver as provided in the Act, and Beneficiary, in its discretion, personally, by its agents or attorneys or pursuant to court order as trustee in possession or receiver as provided in the Act may enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers, and accounts of Trustor relating thereto, and may exclude Trustor and any agents and servants thereof wholly therefrom and may, on behalf of Trustor, or in its own name as Beneficiary and under the powers herein granted:

(1)     enter upon the Premises and conduct the business, if any, thereof, either personally or by its agents, with full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the rents, issues, deposits, profits, and avails of the Premises, including without limitation actions for recovery of rent, actions in forcible detainer, and actions in distress for rent, all without notice to Trustor;

(2)     cancel or terminate any lease or sublease of all or part of the Premises for any cause or on any ground that would entitle Trustor to cancel the same;

(3)     elect to disaffirm any lease or sublease of all or any part of the Premises made subsequent to this Deed of Trust without Beneficiary's prior written consent;

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 48 of 73

(4)    extend or modify any then existing leases and make new leases of all or any part of the Premises, which extensions, modifications, and new leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the maturity date of the Note and the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor, all persons whose interests in the Premises are subject to the lien hereof, and the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the indebtedness hereby secured, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any such purchaser;

(5)    make all necessary or proper repairs, decorations, renewals, replacements, alterations, additions, betterments, and improvements in connection with the Premises as may seem judicious to Beneficiary, to insure and reinsure the Premises and all risks incidental to Beneficiary's possession, operation and management thereof, and to receive all rents, issues, deposits, profits, and avails therefrom; and

(6)    apply the net income, after allowing a reasonable fee for the collection thereof and for the management of the Premises, to the payment of taxes, premiums and other charges applicable to the Premises, or in reduction of the indebtedness hereby secured in such order and manner as Beneficiary shall select.

Nothing herein contained shall be construed as constituting Beneficiary a "trustee in possession" in the absence of the actual taking of possession of the Premises. The right to enter and take possession of the Premises and use any personal property therein, to manage, operate, conserve and improve the same, and to collect the rents, issues and profits thereof, shall be in addition to all other rights or remedies of Beneficiary hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Trustor hereby further expressly releases and waives any and all damages and claims for damages occasioned by such expulsion, except as result from the wrongful act or omission of Beneficiary, its agents or contractors. The expenses (including any receiver's fees, reasonable counsel fees, costs and agent's compensation) incurred pursuant to the powers herein contained shall be secured hereby which expenses Trustor promises to pay upon demand together with interest at a rate of nine percent (9%) per annum. Beneficiary shall not be liable to account to Trustor for any action taken pursuant hereto other than to account for any rents actually received by Beneficiary. Without taking possession of the Premises, Beneficiary may, in the event the Premises become vacant or are abandoned, take such steps as it deems appropriate to protect and secure the Premises (including hiring watchmen therefore) and all costs incurred in so doing shall constitute so much additional indebtedness hereby secured payable upon demand with interest thereon at the rate of eleven percent (11%) per annum.

6.    <u>Powers and Obligations of Trustee</u>. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 49 of 73

(a) <u>Powers of Trustee</u>. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

(b) <u>Obligations to Notify</u>. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

(c) <u>Trustee</u>. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

(d) <u>Successor Trustee.</u> Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of San Francisco County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

(e) <u>Acceptance by Trustee.</u> Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

7.    Compliance with State and Federal Law.

(a) <u>Compliance with Federal Law</u>. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

1.    When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 50 of 73

2. Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

(b) <u>Compliance with California Law</u>. In the event that any provision in this Deed of Trust shall be inconsistent with any provision of the Act the provisions of the Act shall take precedence over the provisions of this Deed of Trust, but shall not invalidate or render unenforceable any other provision of this Deed of Trust that can be construed in a manner consistent with the Act. In addition:

1. If any provisions of this Deed of Trust shall grant to Beneficiary any rights or remedies upon default of the Trustor which are more limited than the rights that would otherwise be vested in Beneficiary under the Act in the absence of said provision, Beneficiary shall be vested with the rights granted in the Act to the full extent permitted by law; provided, however, that nothing herein contained shall be deemed to derogate from any cure rights or notice requirements expressly provided for in this Deed of Trust.

2. Without limiting the generality of the foregoing, all expenses incurred by Beneficiary to the extent reimbursable under the Act, whether incurred before or after any decree or judgment of foreclosure, and whether enumerated herein shall be added to the indebtedness secured by this Deed of Trust or by the judgment of foreclosure.

8. <u>Waiver of Right to Redeem From Sale - Waiver of Appraisement, Valuation, Etc.</u> Trustor shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "Moratorium Laws," now existing or hereafter enacted in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust, but hereby waives the benefit of such laws. Trustor for itself and all who may claim through or under it waives any and all right to have the property and estates comprising the Premises marshaled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Premises sold as an entirety. In the event of any sale made under or by virtue of this instrument, the whole of the Premises may be sold in one parcel as an entirety or in separate lots or parcels at the same or different times, all as the Beneficiary may determine. Beneficiary shall have the right to become the purchaser at any sale made under or by virtue of this instrument and Beneficiary so purchasing at any such sale shall have the right to be credited upon the amount of the bid made therefore by

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 51 of 73

Beneficiary with the amount payable to Beneficiary out of the net proceeds of such sale. To the fullest extent permitted by law, Trustor hereby voluntarily and knowingly waives its rights of reinstatement and redemption as allowed under the Act, on behalf of Trustor, and each and every person acquiring any interest in, or title to the Premises described herein subsequent to the date of this Deed of Trust, and on behalf of all other persons to the extent permitted by applicable law.

9. Costs and Expenses of Foreclosure. All fees and expenses allowable pursuant to the provisions hereof shall be additional indebtedness secured hereby and shall be a charge upon said Premises and shall constitute a lien thereon prior and paramount to the principal note and interest secured hereby, and whenever possible shall be provided for in any judgment or decree entered in any such proceedings. There shall be included in any decree foreclosing the lien of this Deed of Trust and be paid out of the rents or proceeds of any sale made in pursuance of any such decree in the following order: (1) all costs of such suit or suits, advertising, sale and conveyance, reasonable attorneys' fees of attorneys for the Beneficiary, stenographers' fees, outlays for documentary evidence and costs of abstract and examination of title, title opinions and title guaranty policies; (2) all moneys advanced by the Beneficiary for any purpose authorized in the Deed of Trust, with interest on such advances at a rate of eleven percent (11%) per annum (the "Default Rate"); (3) all the accrued interest remaining unpaid on the indebtedness hereby secured; (4) all of the principal note at such times remaining unpaid. The overplus of the proceeds of the sale, if any, shall then be paid to the Trustor. In case, after legal proceedings are instituted to foreclose the lien of this indenture, after the failure of Trustor to cure any default under the terms hereof prior to the expiration of any applicable grace periods, tender is made of the entire indebtedness due hereunder, the Beneficiary shall be entitled to reimbursement for expenses incurred in connection with such legal proceedings, including such expenditures as are enumerated above, and such expenses shall be so much additional indebtedness secured by this indenture, and no such suit or proceedings shall be dismissed or otherwise disposed of until such fees, expenses and charges shall have been paid in full.

The Trustor promises to pay all costs, expenses and reasonable attorneys' fees incurred by the Beneficiary in collecting the debt secured hereby whether by foreclosure, suit or otherwise, in protecting or sustaining the lien of this Deed of Trust or in any litigation or controversy arising from or in connection with the Note or this Deed of Trust, together with interest thereon, provided the same are incurred after the failure of Trustor to cure any default hereunder prior to the expiration of any applicable grace periods, from the date of payment at the Default Rate and the Trustor agrees that any such sums and the interest thereon shall be a lien on said Premises and property and shall be secured by this Deed of Trust.

10. Application of Proceeds. The proceeds of any foreclosure sale of the Premises or of any sale of property shall be distributed in the following order of priority: First, on account of all costs and expenses incident to the foreclosure or other proceedings; Second, to all other items which under the terms hereof constitute indebtedness hereby secured with interest thereon as herein provided.

Case: 23-30874   Doc# 31   Filed: 01/20/24   Entered: 01/20/24 17:17:11   Page 52 of 73

11. Beneficiary's Remedies Cumulative - No Waiver. No remedy or right of Beneficiary shall be exclusive of but shall be cumulative and in addition to every other remedy or right now or hereafter existing at law or in equity or by statute. No delay in the exercise or omission to exercise any remedy or right accruing on any default shall impair any such remedy or right or be construed to be a waiver of any such default or acquiescence therein, nor shall it affect any subsequent default of the same or different nature. Every such remedy or right may be exercised concurrently or independently, and when and as often as may be deemed expedient by Beneficiary.

12. Beneficiary Party to Suits. If Beneficiary shall be made a party to or shall intervene in any action or proceeding affecting the Premises or the title thereto or the interest of Beneficiary under this Deed of Trust (including probate and bankruptcy proceedings), or if Beneficiary employs an attorney to collect any or all of the indebtedness hereby secured or to enforce any of the terms hereof or realize hereupon or to protect the lien hereof, or if Beneficiary shall incur any costs or expenses in preparation for the commencement of any foreclosure proceeding or for the defense of any threatened suit or proceeding which might affect the Premises or the security hereof, whether or not any such foreclosure or other suit or proceeding shall be actually commenced, then in any such case, Trustor agrees to pay to Beneficiary, immediately and without demand, all reasonable costs, charges, expenses and attorneys' fees incurred by Beneficiary in any such case, and the same shall constitute so much additional indebtedness hereby secured payable upon demand with interest at the rate of eleven percent (11%) per annum.

13. Environmental Matters. The Trustor agrees to indemnify, defend and hold Beneficiary harmless from and against any and all loss, cost (including attorney fees), liability and damage whatsoever, including all foreseeable and unforeseeable consequential damages, directly or indirectly arising out of the presence, use, generation, storage or disposal of "Hazardous Substances" or "Hazardous Waste" (as those terms are defined or cross-referenced in the applicable provisions of the Code of Federal Regulations pertaining to the United States Environmental Protection Authority) or similarly dangerous contaminants in, on, under or, in the proximate vicinity of the Premises and the cost of any required or necessary repair, cleanup or detoxification and the preparation of any closure or other required plans, incurred by Beneficiary by reason of any violation of any applicable statute or regulation for the protection of the environment which occurs or has occurred upon the Premises, or by reason of the imposition of any governmental lien for the recovery of environmental cleanup costs expended by reason of such violation. It is expressly understood and agreed that to the extent that Beneficiary is strictly liable under any such statute, Trustor's obligation to Beneficiary under this indemnity shall likewise be without regard to fault on the part of Trustor with respect to the violation of law which results in liability to Beneficiary. The provisions of this Section 12 shall survive the performance of the Obligations, the repayment of any additional sums or indebtedness hereby secured, the release of the Deed of Trust and all other indication of termination of the relationship between the Trustor and Beneficiary.

14. Costs upon Foreclosure or Public Sale. In the case of the foreclosure of the lien of this Deed of Trust by the Trustee, in any court of law or equity, or the public sale of the Premises by Trustee there shall be allowed all court costs and expenses incurred by the Trustee, including reasonable attorney's fees, stenographers' charges, cost of procuring a complete abstract of title to

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 53 of 73

said Premises and continuations thereof, opinions of title or title guaranty policies and continuations thereof covering said foreclosure proceedings, cost of procuring testimony and evidence and all costs and expenses incurred by the Trustee in and about any such suit or proceeding or sale, or in the preparation therefore; and in case the Trustee shall be made party to any suit or legal proceedings by reason of this Deed of Trust, its costs, expenses and reasonable attorneys' fees in such suit or proceedings shall be paid by the Trustor and if not paid shall become so much additional indebtedness hereunder and shall be a further lien or charge upon said Premises.

15.     Due on Sale.  Trustor will not without the prior written consent of Beneficiary, transfer, convey, deed, assign or encumber the Premises.  If Trustor is a trust, the beneficiaries of Trustor will not encumber, assign or convey their beneficial interest in Trustor without the prior written consent of Beneficiary.  If the Trustor is a partnership, there shall be no encumbrance, assignment or conveyance of a majority in interest of the original partners in the partnership without the prior written consent of Beneficiary.  If the Trustor is a corporation, there shall be no encumbrance, assignment or conveyance of a majority of the shareholders of the corporation without the prior written consent of Beneficiary.  Whenever the consent of Beneficiary is required under this paragraph, such consent may be withheld by Beneficiary for any reason.

16.     Prepayment.  Trustor may prepay, at any time, the outstanding principal balance due under the Note (along with any other sums due to the obligee thereunder, including any prepayment fees or charges required to be paid under the Note) only in accordance with the terms of the Note.  Upon the permitted prepayment by Trustor of all amounts described in the preceding sentence, Beneficiary shall release the encumbrance of this Deed of Trust from the Premises and shall reconvey same to Trustor.

17.     Liens.  No lien provided for by the Statutes of California, in force at any time while the lien hereof exists, in favor of any person furnished labor or materials in the erection or repair of any building now or hereafter on said land, shall attach to said land or building, except as subject and subordinate to the lien of this instrument and any person dealing with said Premises after the recording of this instrument is hereby charged with notice of and consent to this stipulation, and with a waiver of any lien except as subject and subordinate hereto.

18.     Change in Law.  In the event of the passage, after the date of this Deed of Trust, of any law of the State of California deducting from the value of land for the purpose of taxation any lien thereon or changing in any way the laws now in force for the taxation of Deed of Trusts for State or local purposes or the manner of collection of such tax so as to make it obligatory upon the Beneficiary to pay such tax, or if any such tax is imposed under any existing law, then the whole of the principal sum secured hereby, together with accrued interest thereon shall, at the option of the Beneficiary, after thirty (30) days notice to the Trustor, become due and payable, and the said Beneficiary shall have the right to foreclose immediately this Deed of Trust, unless said Trustor shall pay such tax or charge forthwith upon demand or unless adequate title insurance over any such lien is provided to Beneficiary; provided, however, that should the payment of such tax or charge result in usury, then only such portion of such tax or charge shall be paid by the Trustor as will not amount to an exaction of interest in excess of the highest rate permitted by law.

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 54 of 73

19.     Remedies Cumulative.  All rights and remedies given to the Beneficiary by the covenants, undertakings and provisions of this Deed of Trust, are deemed to be cumulative and not in any way in derogation of the rights of the Beneficiary under the laws of the State of California and the invalidity of any one or more covenants, phrases, sentences, clauses or paragraphs of this Deed of Trust shall not affect the remaining portions of this indenture, or any part hereof; and the failure on the part of the Beneficiary to exercise any option or privilege granted under the note or Deed of Trust shall not be deemed a waiver of such option or privilege nor estop the Beneficiary from at any time in the future exercising such option or privilege.

20.     Covenants Run with Land.  Every covenant and agreement, condition, promise and undertaking herein, of said Trustor, shall run with the land, is a condition upon which the loan secured was made, and is of the essence of this instrument, and breach of any thereof shall be deemed a material breach going to the substance hereof and shall extend to and be binding upon the Trustor and any and all persons claiming by, through or under the Trustor, to the same effect as if they were in every case named and expressed and all of the covenants hereof shall bind them and each of them, both jointly and severally and shall inure to the benefit of the Beneficiary, its successors and assigns; any notice to be given hereunder may be given by first-class mail, the date of mailing to be taken as the date of giving such notice and without respect to the actual receipt thereof.

21.     Assignment of Leases.  Trustor agrees that as additional security for the payment of the indebtedness secured hereby, any and all future leases or subleases made by Trustor or its tenants for all or any part of the Premises.   During the term of this Deed of Trust, each lease of Trustor shall contain a provision requiring that at the election of the holder of the indebtedness, the tenant will assign any permitted sublease to such holder.

22.     Public Liability Insurance.  Trustor shall provide Beneficiary with a certificate of insurance establishing that the Trustor is insured for comprehensive general public liability insurance with respect to the Premises, which insurance shall provide single limit coverage for not less than $1,000,000.00.  Such insurance shall be placed with a company acceptable to the Beneficiary and shall provide that Beneficiary shall be given not less than thirty (30) days advance notice of cancellation or termination of the policy.

23.     Additional Collateral - Security Agreement.  With respect to the Additional Collateral (hereinafter defined):

(a)     Trustor hereby grants a security interest in and to, and hereby sells, conveys, confirms, deeds and sets over unto Beneficiary and its successors and assigns, all (i) furniture, furnishings, appliances, equipment, fixtures and appurtenances now or hereafter acquired by Trustor and installed or located upon the Real Estate, (ii) all contract rights of Trustor pertaining to or with respect to the Real Estate, and (iii) all other property interests, intangible rights or other interests held or capable of being held by Trustor with respect to the items described in subsection (i) above or the Real Estate (collectively, the "Additional Collateral") whether now or hereafter located, erected on or placed in or upon the Real Estate or any part thereof, and all replacements thereof and accessions thereto and all proceeds thereof.  Trustor represents and covenants that (y) except for the security

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 55 of
73

interest granted hereby, Trustor is the owner of the Additional Collateral free from any lien, security interest or encumbrance, and (z) Trustor has made payment in full for all such Additional Collateral. Trustor will, upon request from Beneficiary, deliver to Beneficiary such further security agreements, chattel deeds, financing statements and evidence of ownership of such items as Trustor may specify in such request.

(b) If a default shall occur under the Note or this Deed of Trust and be continuing beyond the expiration of any applicable grace and notice periods, Beneficiary shall have all rights and remedies available to Trustor under the Note and this Deed of Trust as well as all rights and remedies of a "secured party" under the California Uniform Commercial Code ("Code"). Trustor hereby waives all rights that may legally be waived and agrees that ten (10) days notice by Beneficiary to Trustor is fair and reasonable notification under the Code of any public sale of any of the Additional Collateral and is also fair and reasonable notification after which any private sale or other disposition of the Additional Collateral can occur. The reasonable expenses of retaking, holding, preparing for sale, selling and the like incurred by Beneficiary in connection with the enforcement or assertion of any rights or remedies of Beneficiary shall be included in the indebtedness secured hereby and shall include, but not be limited to, reasonable attorneys' fees and legal expenses incurred by Beneficiary. Trustor agrees that, without the written consent of Beneficiary, Trustor will not remove or permit to be removed from the Real Estate any of the Additional Collateral except that so long as Trustor is not in default hereunder, Trustor shall be permitted to sell or otherwise dispose of the Additional Collateral in the ordinary course of Trustor's business or when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of Trustor's business from the Real Estate, but only upon replacing the same with, or substituting for the same, other Additional Collateral at least equal in value and utility to the initial value and utility of that disposed of and in such a manner that said replacement or substituted Additional Collateral shall be subject to the security interest created hereby and that the security interest of Beneficiary shall be perfected and prior to any other security interest, it being expressly understood and agreed that all replacements, substitutions and additions to the Additional Collateral shall be and become immediately subject to the security interest of this Deed of Trust and Security Agreement and covered hereby. Trustor covenants and represents that all of the Additional Collateral now is, and that all replacements thereof, substitutions therefore or additions thereto, unless Beneficiary otherwise consents, will be, free and clear of any other liens, encumbrances, title retention devices and security interests.

(c) Trustor, upon request by Beneficiary from time to time, shall execute, acknowledge and deliver to Beneficiary, a separate security agreement, financing statement or other similar security instruments, in form satisfactory to Beneficiary, covering all property of any kind whatsoever owned by Trustor, which in the sole opinion of Beneficiary is essential to the operations of Trustor's business from the Real Estate and which constitutes goods within the meaning of the Code or concerning which there may be any doubt whether the title to same has been conveyed by or security interest perfected by this Deed of Trust and Security Agreement, and Trustor will further execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any financing statement, affidavit, continuation statement or certificate or other document as Beneficiary may request in order to perfect, preserve, maintain, continue and extend the security interest and the

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 56 of 73

priority of this Deed of Trust and Security Agreement and such security interest. Trustor further agrees to pay to Beneficiary on demand all costs and expenses incurred by Beneficiary in connection with the preparation, execution, recording, filing and re-filing of any such document. Trustor shall from time to time, on request of Beneficiary, deliver to Beneficiary an inventory of the Additional Collateral in reasonable detail.

24.     Eminent Domain. Trustor further covenants and agrees that if the above described Premises or any part thereof be condemned under any power of eminent domain or acquired for any public use or quasi-public use, the damages, proceeds and consideration for such acquisition to the extent of the full amount of indebtedness upon this Deed of Trust and obligation secured hereby remaining unpaid, are hereby assigned by Trustor to Beneficiary, its successors or as said Beneficiary, its successors or assigns, to be applied on account of the last maturing installments of such indebtedness.

25.     Payment of Taxes. Within fifteen (15) days of the due date of every installment of real estate taxes or special assessments hereafter accruing with respect to the subject Premises, Trustor shall present to Beneficiary, a photographic or other duplicated copy of the receipted tax bill showing the payment of such installment, or other evidence satisfactory to the Beneficiary that the tax payment has been made.

26.     Bankruptcy of Principal Party. If Borrower or any principal of Trustor (a "Principal Party") shall make an assignment for the benefit of creditors, or if a receiver be appointed for Trustor or for any part of the Premises, or if any Principal Party files a petition in bankruptcy, or is adjudicated a bankrupt or files any petition or institutes any proceedings under the Federal bankruptcy laws of the United States, and such proceedings shall not be dismissed or order appointing a receiver shall not be dismissed within thirty (30) days, then on the happening of any one or more of these events, the whole indebtedness secured hereby shall immediately become due and payable, at the option of the Beneficiary, and this Deed of Trust may thereupon be foreclosed for the whole of said principal, interest and costs.

27.     Cost of Collection. Trustor promises to pay all costs, expenses and reasonable attorneys' fees incurred by Beneficiary in enforcing its rights under this Deed of Trust, in collecting any debt secured hereby whether by foreclosure, suit or otherwise, in protecting or sustaining the lien of this Deed of Trust or in any litigation or controversy arising from or in connection with the Note or this Deed of Trust, together with interest thereon, from the date of payment at the rate of eleven percent (11%), and Trustor agrees that any such sums and the interest thereon shall be a lien on said Premises and property and shall be secured by this Deed of Trust.

28.     Forbearance. No action for the enforcement of the lien or of any provision hereof shall be subject to any defense which would not be good and available to the party interposing same in an action at law upon the Obligations hereby secured.

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 57 of 73

29.    <u>Severability.</u>  Wherever possible each provision of this Deed of Trust shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Deed of Trust shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Deed of Trust. In the event of a conflict of any of the terms and provisions of this Deed of Trust with the terms and provisions of any other instrument or agreement given to create or evidence any of the Obligations secured by this Deed of Trust, Beneficiary may, at its option, determine which terms and provisions shall prevail.

30.    <u>Time of Essence; Waiver.</u>  It is specifically agreed that time is of the essence of this Deed of Trust. The waiver of any option, or any obligations secured hereby, shall not at any time thereafter be held to be abandonment of such rights. Notice of the exercise of any option granted to Beneficiary herein, or in the Obligations secured hereby, is not required to be given.

31.    <u>Successors and Assigns.</u>  All of the covenants herein contained of Trustor shall bind Trustor, its successors and assigns, and the benefits and advantages thereof shall inure to the benefit of Beneficiary, its successors and assigns. Whenever used, the singular number shall include the plural, the plural the singular and the use of any gender shall include all genders.

32.    <u>Waiver of Homestead.</u>  Trustor hereby waives any and all homestead rights which Trustor may have in the Premises.

33.    <u>Senior Deed of Trust.</u>  Trustor shall perform all of its obligations under the First Deed of Trust on a timely basis and shall give to Beneficiary when received copies of any notices received from the mortgagees under the First Deed of Trust or the holder of the note(s) secured thereby. Trustor represents that (a) there are no defaults under the First Deed of Trust, (b) this Deed of Trust is permitted under the First Deed of Trust, and (c) there are only uniform payments of principal and interest scheduled under the First Deed of Trust. Trustor agrees that any sums advanced for the purpose of curing any default under the First Deed of Trust shall become additional indebtedness secured hereby.

34.    <u>Notices.</u>  Notice from one party to another relating to this Deed of Trust shall be deemed effective if made in writing and delivered to the recipient's address set forth below by any of the following means: (a) hand delivery, (b) registered or certified mail, postage prepaid, with return receipt requested, (c) first class or express mail, postage prepaid, or (d) Federal Express or like overnight courier service. Notice made in accordance with this paragraph shall be deemed delivered upon receipt if delivered by hand, three (3) business days after mailing if mailed by first class, registered or certified mail, or one business day after mailing or deposit with an overnight courier service if delivered by express mail or overnight courier. Any notice which either party hereto may desire or be required to give to the other party shall be addressed to:

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 58 of 73

**TRUSTOR**

Erick Fernando Crespo
127 Bridgeview Drive
San Francisco, California 94124


**TRUSTEE**

Consumer's Title Company of California
11246 Gold Express Drive, Suite 101
Gold River, California 95670


**BENEFICIARY**

Fremont Bank, Commercial Lending
Attn: Kevin Mon
2580 Shea Center Drive, Mailstop 2580-6
Livermore, California 94551


or at such other place as either party hereto may by notice in writing designate as a place for service of notice. This notice provision shall be inapplicable to any judicial or non-judicial proceeding where California law governs the manner and timing of notices in foreclosure or receivership proceedings.

**IN WITNESS WHEREOF**, the undersigned, as Trustor, have caused these presents to be duly executed as of the day and year first above written and hereby expressly waive any and all homestead rights that the undersigned may have in the real property described on Exhibit "A":

**TRUSTOR:**

Erick Fernando Crespo

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 59 of 73

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                           ) ss
COUNTY OF _San Francisco_  )

On this 29 day of April, 2020, before me, Chester Sath Saing (name), Notary Public (title), personally appeared Erick Fernando Crespo, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity(ies) upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

_____

Printed Name: Chester Sath Saing
(seal)

CHESTER SATH SAING
COMM. # 2181443
NOTARY PUBLIC • CALIFORNIA
SAN FRANCISCO COUNTY
Comm. Exp. JAN. 27, 2021

J:\TJC\20440\172\CA-Deed of Trust.doc                - 18 -

## EXHIBIT "A"

### Legal Description

The land referred to herein below is situated in the City of San Francisco, County of San Francisco, State of California and is described as follows:

BEGINNING AT THE POINT OF INTERSECTION OF SOUTHWESTERLY LINE OF BRIDGEVIEW DRIVE AND THE SOUTHEASTERLY LINE OF LOT NO. 5, IN BLOCK NO. 5345, IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA ACCORDING TO MAP HEREINAFTER REFERRED TO; RUNNING THENCE NORTHWESTERLY ALONG SAID LINE OF BRIDGEVIEW DRIVE 26.035 FEET TO THE SOUTHEASTERLY LINE OF LOT NO. 6 IN SAID BLOCK; THENCE SOUTHWESTERLY ALONG SAID SOUTHEASTERLY LINE OF 112.585 FEET TO THE SOUTHERLY LINE OF SAID LOT NO. 5; THENCE EASTERLY ALONG SAID SOUTHERLY LINE OF 28.994 FEET TO THE NORTHWESTERLY LINE OF LOT NO. 4, IN SAID BLOCK; THENCE NORTHEASTERLY ALONG SAID NORTHWESTERLY LINE OF 100.463 FEET TO THE POINT OF BEGINNING.

BEING LOT NO. 5, IN BLOCK NO. 5345, ACCORDING TO MAP ENTITLED "MAP OF SHARMAN'S A SUBDIVISION OF BRIDGEVIEW TERRACE, SAN FRANCISCO, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, JULY 10, 1941, RECORDED IN MAP BOOK "O" AT PAGES 41 AND 42.

Property Address:
127 Bridgeview Drive
San Francisco, California 94124

Permanent Real Estate
Assessor's Parcel Number:
32-5345-005-01

Case: 23-30874    Doc# 31    Filed: 01/20/24    Entered: 01/20/24 17:17:11    Page 61 of 73

EXHIBIT G

Debtor name **Wise Choice Trans Corp**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA

Case number (if known) _____

☐ Check if this is an
amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          **12/15**

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

**For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.**

**Part 1:        Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|
| 3. | **Checking, savings, money market, or financial brokerage accounts** *(Identify all)* | | |
| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number |
| 3.1. | **Chase Bank** balance varies | **checking** | **6571** | **$10,000.00** |
| 3.2. | **Chase Bank** | **checking** | **0320** | **$2,800.00** |

4. **Other cash equivalents** *(Identify all)*

5. **Total of Part 1.**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.          **$12,800.00**

**Part 2:        Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

7. **Deposits, including security deposits and utility deposits**
   Description, including name of holder of deposit

   7.1.  **Warehouse deposit**          **$100,000.00**

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

| 9. | **Total of Part 2.** | **$100,000.00** |
|----|---|---|
| | Add lines 7 through 8. Copy the total to line 81. | |

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

☑ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

13. **Does the debtor own any investments?**

☑ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
☑ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture** Miscellaneous officer furniture, phone equipment. Value is an estimate | **$0.00** | | **$2,000.00** |
| 40. | **Office fixtures** | | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software** Cameras and security equipment value is an estimate | **$0.00** | | **$12,500.00** |
| | **Miscellaneous computers, printers, scanners and peripherals.** | **$0.00** | | **$5,000.00** |

42. **Collectibles** *Examples*: Antiques and figurines, paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43. **Total of Part 7.** | **$19,500.00**
Add lines 39 through 42. Copy the total to line 86.

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
☑ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
☑ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| | | | |
|---|---|---|---|
| 47.1. **Various trucks subject to security interest**<br>**See attached list**<br>**Values are estimated** | $0.00 | | $844,887.00 |
| 47.2. **See attached list of vehicles owned free and clear.**<br>**Values are estimated.** | $0.00 | | $282,869.00 |
| 47.3. **Dodge Ram Truck**<br>**41,700 miles**<br>**value is estimated** | $0.00 | | $38,725.00 |
| 47.4. **Dodge Ram 2021**<br>**value is an estimate**<br>**auto is in possession of former employee, Darrell Leon, who has been paying on the loan** | $0.00 | | $35,000.00 |
| 47.5. **Dodge Ram 2021**<br>**28,000 miles**<br>**Registered in company name and in the name of Erick Crespo** | $0.00 | | $56,000.00 |

48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm**

| Liened Vehicle # | Vehicles Lic Plate # | ViN # | Make and Model | Milage | Estimated VALUE |
|---|---|---|---|---|---|
| WC1 | 84742V2 | 3ALACXFC1KDKT6175 | 2019 Freightliner M2 | 45,726 | $55,342.00 |
| WC19 | 92149J2 | 3ALACWFB6KDKG3305 | 2019 Freightliner M2 | 134,557 | $49,000.00 |
| WC20 | 92148J2 | 3ALACWFB4KDKG3304 | 2019 Freightliner M2 | 148,524 | $49,000.00 |
| WC21 | 92147J2 | 3ALACWFB3KDKG3309 | 2019 Freightliner M2 | 154,714 | $49,000.00 |
| WC22 | 05620M2 | 3ALACWFBXKDKG3310 | 2019 Freightliner M2 | 142,846 | $49,000.00 |
| WC23 | 62022P2 | 3ALACWFCXKDKU4544 | 2019 Freightliner M2 | 147,398 | $49,000.00 |
| WC24 | 62021P2 | 3ALACWFC8KDKU4543 | 2019 Freightliner M2 | 163,051 | $49,000.00 |
| WC25 | 06438P2 | 3ALACWFC1KDKU4545 | 2019 Freightliner M2 | 110,940 | $50,125.00 |
| WC28 | 73150R2 | 3ALACWFC8KDKR1863 | 2019 Freightliner M2 | 156,692 | $49,000.00 |
| WC29 | 67276S2 | 1FVACWFCXKHKR1938 | 2019 Freightliner M2 | 118,032 | $49,558.00 |
| WC30 | 67275S2 | 1FVACWD2XKHLJ4404 | 2019 Freightliner M2 | 114,827 | $49,814.00 |
| WC31 | 67272S2 | 3ALACWFC5KDLR6943 | 2019 Freightliner M2 | 110,326 | $50,174.00 |
| WC32 | 67274S2 | 3ALACWFC5KDKR1979 | 2019 Freightliner M2 | 126,164 | $49,000.00 |
| WC33 | 67273S2 | 3ALACWFC7KDLR6944 | 2019 Freightliner M2 | 125,647 | $49,000.00 |
| WC4 | 62023P2 | 3ALACWFB3KDKL5627 | 2019 Freightliner M2 | 164,554 | $49,937.00 |
| WC6 | 84741V2 | 3ALACXFCXKDKT6174 | 2019 Freightliner M2 | 113,290 | $49,937.00 |
| WC27 | 73149R2 | 3ALACWFC0KDKR1890 | 2018 Metro 26' Van | 136,076 | $49,000.00 |

**Total Value**    **$844,887.00**

| Vehicles<br>Vehicle # | Owned<br>Lic Plate # | Free and Clear<br>ViN # | Make and Model | Milage | Estimated<br>VALUE |
|---|---|---|---|---|---|
| Tractor 1 | 9F73403 | 3AKJGND68GDHD5068 | 2016 Freightliner Coronado | 118,504 | $95,552.00 |
| WC12 | 87668G2 | 1FVACWDTXCDBD5084 | 2012 Freightliner M2 | 273,562 | $37,411.00 |
| WC13 | 3043000 | 1FVACWDT0DDBU8772 | 2013 Freightliner M2 | 311,640 | $38,275.00 |
| WC14 | 3042900 | 1FVACWDT1CDBD5099 | 2012 Freightliner M2 | 288,596 | $36,509.00 |
| WC16 | 87671G2 | 1FVACWDT4DDBV0556 | 2013 Freightliner M2 | 301,033 | $38,275.00 |
| WC18 | 89211G2 | 1FVACWDT7CDBW1064 | 2012 Freightliner M2 | 282,975 | $36,847.00 |
| | | | **Total Value** | | $282,869.00 |

machinery and equipment)
**2005 Mazda forklift**                                    $0.00                        $5,000.00

**Miscellaneous equipment used for loading and
unloading (e.g. handtrucks, pallet jacks)
Value is an estimate**                                     $0.00                        $3,500.00

51.    **Total of Part 8.**                                                    | $1,265,981.00 |

       Add lines 47 through 50.  Copy the total to line 87.

52.    **Is a depreciation schedule available for any of the property listed in Part 8?**
       ■ No
       ☐ Yes

53.    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

| Part 9: | **Real property** |
54. **Does the debtor own or lease any real property?**

   ■ No.  Go to Part 10.
   ☐ Yes Fill in the information below.

| Part 10: | **Intangibles and intellectual property** |
59. **Does the debtor have any interests in intangibles or intellectual property?**

   ■ No.  Go to Part 11.
   ☐ Yes Fill in the information below.

| Part 11: | **All other assets** |
70. **Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ☐ No.  Go to Part 12.
   ■ Yes Fill in the information below.

                                                                              **Current value of
                                                                              debtor's interest**

71.    **Notes receivable**
       Description (include name of obligor)

72.    **Tax refunds and unused net operating losses (NOLs)**
       Description (for example, federal, state, local)

73.    **Interests in insurance policies or annuities**

74.    **Causes of action against third parties (whether or not a lawsuit
       has been filed)**

       **Claims against Oscar Rojas et al in pending litigation**                    **Unknown**

| Nature of claim | **Breach of fiduciary duty and
other claims against former
employee** |
| Amount requested | $0.00 |

Debtor     **Wise Choice Trans Corp**                          Case number *(If known)* _____
           Name

75.    **Other contingent and unliquidated claims or causes of action of**
       **every nature, including counterclaims of the debtor and rights to**
       **set off claims**

76.    **Trusts, equitable or future interests in property**

77.    **Other property of any kind not already listed** *Examples:* Season tickets,
       country club membership

78.    **Total of Part 11.**                                                          | $0.00 |
       Add lines 71 through 77. Copy the total to line 90.

79.    **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

| Debtor | **Wise Choice Trans Corp** | Case number *(If known)* _____ |
|--------|---------------------------|-------------------------------------------|
|        | Name                      |                                           |

| Part 12: | Summary |
|----------|---------|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $12,800.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $100,000.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $19,500.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $1,265,981.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*..............................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,398,281.00 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $1,398,281.00 |

EXHIBIT H

# UCC Search



*UCC Documents have been processed through: 12/07/2023*

[Skip to main content](#)



*...lifornia Secretary of State's Uniform ...mation for lien notices that have been filed with this office. The UCC Search is updated as documents are filed. The data provided is not a complete or certified record.*

Login

Wise choice trans corp 

Advanced ⌄

Results: 15

| UCC Type | Debtor Information | File Number | Secured Party Info | Status | Filing Date | Lapse Date |
|---|---|---|---|---|---|---|
| UCC > | WISE CHOICE TRANSPORTATION INC - LOS ANGELES, CA | 167505894742 | US BANK NATIONAL ASSOCIATION - OSHKOSH, WI | Active | 01/22/2016 | 01/22/2026 |
| UCC > | WISE CHOICE TRANS CORP. - SAN JOSE, CA | 207760431000 | CHTD COMPANY - SPRINGFIELD, IL | Active | 02/01/2020 | 02/01/2025 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | U230019652730 | RAISTONE PURCHASING LLC-SERIES XXXV - NEW YORK, NY | Active | 03/22/2023 | 03/22/2028 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | U230019652831 | RAISTONE PURCHASING LLC-SERIES XXXV - NEW YORK, NY | Active | 03/22/2023 | 03/22/2028 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | 197707269715 | ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP. - LAKE SUCCESS, NY | Active | 04/15/2019 | 04/15/2024 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | 197707855574 | MARLIN BUSINESS BANK - SALT LAKE CITY, UT | Terminated | 04/17/2019 | 04/17/2024 |
| UCC > | WISE CHOICE TRANS CORP. - | | FREMONT BANK | | | |



| UCC | | | | | | |
|---|---|---|---|---|---|---|
| UCC > | SAN JOSE, CA | 207774997648 | - LIVERMORE, CA | Active | 04/24/2020 | 04/24/2025 |
| UCC > | WISE CHOICE TRANS CORP. - SAN JOSE, CA | 207775239072 | C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | Active | 04/27/2020 | 04/27/2025 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | 187646489376 | JPMORGAN CHASE BANK, NA - LOUISVILLE, KY | Lapsed | 04/30/2018 | 04/30/2023 |
| UCC > | WISE CHOICE TRANS CORP. - SAN JOSE, CA | U220202557419 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE - SPRINGFIELD, IL | Terminated | 06/15/2022 | 06/15/2027 |
| UCC > | WISE CHOICE TRANSPORTATION INC. - LOS ANGELES, CA | 207802554609 | U.S. SMALL BUSINESS ADMINISTRATION - EL PASO, TX | Active | 07/05/2020 | 07/05/2025 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | 147429943548 | BLUE BRIDGE FINANCIAL, LLC - BUFFALO, NY | Active | 09/26/2014 | 09/26/2024 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | 197737562946 | CONTINENTAL BANK - SALT LAKE CITY, UT | Active | 09/30/2019 | 09/30/2024 |
| UCC > | WISE CHOICE TRANS CORP. - SAN FRANCISCO, CA | 147434415689 | JPMORGAN CHASE BANK, NA - LOUISVILLE, KY | Active | 10/28/2014 | 10/28/2024 |
| UCC > | WISE CHOICE TRANS CORP - SAN FRANCISCO, CA | 187687840786 | ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP - LAKE SUCCESS, NY | Terminated | 12/17/2018 | 12/17/2023 |

1

© 2023 CA Secretary of State